Our first case up this morning is 417-0223, People v. Duhaime, if that's pronounced correctly. For the appellant is Ryan Wilson, and for the appellee is Allison Brooks. Mr. Wilson, you may proceed, sir. Counsel? More in your honors, I represent Jeffrey Duhaime on behalf of Duhaime, an appellate defender. I plan to focus primarily on issue two today, certainly if the court has questions regarding the other issue I'm looking at. Which is issue two? The reasonable doubt, I would encourage you to. The cases interpreting the drug abuse homicide statute generally have a common theme. Generally speaking, a defendant gives drugs to another person, and that person overdoses on the drug and dies. Because of the drug or because of the combination of drugs that that person has taken. Even in those cases, the state generally introduces some sort of evidence regarding causation. Establishing that it was the drug the defendant supplied that led to the victim's death. Jeffrey Duhaime's case is a very different case than any typical drug abuse homicide case. In fact, I've been able to find many cases similar to it. In this case, Jeffrey Duhaime was at a party and was allegedly selling LSD. One of the people at the party, Keonta Williams, purchased, or at least Alex Wood, a person that was there with her, purchased some LSD for Keonta. And she took that LSD. Now, at or around the same time, Keonta also had Prozac, cannabis, and alcohol in her system. And during the course of that night, a gentleman, Jacob Fairchild, began making out with Keonta, even knowing that she was intoxicated. Brittany Brunier, one of Keonta's friends, had to intervene and stop that interaction between Mr. Fairchild and Keonta. At some point later in the evening, Keonta looked at Brittany and said, I want to go home. Well, Brittany wasn't in the right state of mind to take Keonta, and she was intoxicated. So she left to go find someone that could take Keonta back to her home. In the meantime, Keonta told someone who was sitting next to her that the people at the party were, I believe the quote was, effing nuts, and she ran out of the house. She made her way approximately half a mile to Interstate 39 that connects Kappa and Bloomington. During trial, the state at least inferred that she lived in the Bloomington area and maybe was trying to head home. When she got by the interstate, she found a portion of the fence that bordered that interstate that had been damaged by a prior accident. She worked her way through a piece of barbed wire that was the only piece of fencing left there, through a muddy area, up near the interstate, crossed over a guardrail, stepped onto the shoulder of the interstate, and was struck and killed by a bus on Interstate 39. It's not just that this case is factually different from other drug-induced homicide cases. It's also legally different in that the state failed to introduce any causation testimony linking the LSD to Keonta's cause of death. I don't believe that the causation testimony that was introduced at trial is indisputable. The pathologist who conducted Keonta's autopsy testified that the LSD that was in her system didn't contribute to her actual cause of death. Now, that was primarily because the pathologist's main duty was to determine the cause of death, which was blunt force trauma, as a result of the accident with the bus. A defense expert testified that Keonta's test results came back showing a result of 1.9 nanograms per, I believe it was milliliter, of LSD in her system. And he was unable to find any evidence that someone with a blood content of LSD under 2 was dysfunctional. In fact, he went on to add that the other drugs that Keonta had in her system, the Prozac, which we had no idea where the Prozac came from. There's no evidence in this record that she had a prescription for that. The cannabis and the alcohol all are drugs that can cause hallucinations and confusion. By failing to present any evidence establishing a link between the LSD and the accident involving the bus, the state failed to show that LSD alone can cause death. What dosage of LSD did Keonta even have in her system? Well, but this is not the typical thing. There's no claim that she died from LSD. The claim is that the LSD adversely affected her judgment to the extent that she engaged in behavior she would not have otherwise and resulted in her death. Well, let me step back for a minute. The standard is the state was required to show Keonta reasonable doubt that the LSD was a contributing cause of her death, pursuant to the jury instruction. Now, when you're looking at a contributing cause, in the other drug-induced homicide cases, do you expect to see expert testimony saying, for example... Well, but that's... there's an extra step in this case. In the extra... in the typical case, like the one from the Supreme Court... Fugler v. Meader. Yeah. In the Meader case, the deceased died from the drug. Right. That's the normal in the drug-induced homicide, but you're right, there's nothing quite like this, but the question is, was this a contributing cause? So it seems to me the question is, to what extent could the jury view the ingestion of the LSD that your client gave to this woman, a contributing cause of her death, to explain why would she engage in the behavior she engaged in? That's a question that, because we don't have the evidence to be reduced by the state, the jury couldn't answer. Well, what evidence was there before the jury? Let's assume the evidence is she walks across this field and climbs a fence to get on the interstate highway at 2 o'clock in the morning. As I recall, she's a black woman wearing black clothing, and she starts walking on an interstate highway. This bespeaks of such strange judgment that, and also there wasn't a testimony, at least from some of these people, about how LSD affects them, it affects their judgment generally. Why would the jury not be entitled to conclude, if the standard is a contributing cause, that the cause of her death was walking onto this highway, which was so bizarre, and that her judgment was so affected by the LSD as to be impaired, that she thought this was okay, and that's what led her to being hit by a truck and killed. Right. Because there was no evidence establishing that the LSD would have had that impact on her. Now, there was testimony from other witnesses about their interactions with LSD. Wasn't there testimony about some of her bizarre behavior prior to that? How she was looking, how she was acting, the one girl that tried to hand her some water, she said, it's not water. Clearly paranoid behavior, very frightened, and that her behavior dramatically changed after the consumption of the LSD. Aren't those all facts that the jury's allowed to take into consideration? The jury's allowed to consider those, but the jury has to consider kind of the global picture here. Well, the experts said it can cause hallucination, it can cause paranoia, it can cause bizarre thoughts. They get evidence of hallucinations, paranoia, bizarre thoughts. The requirement is that the defendant's acts are a contributing cause, and the death doesn't result from a cause unconnected with the defendant. Why isn't the jury allowed, since it is a question of fact, to put all those things together and conclude that the LSD was a contributing cause? Because there were these other chemicals as well that could cause all those same things. Which they can consider or not. Well, it's the state's burden to prove beyond a reasonable doubt in this a homicide case that it is the defendant's act that led to the death. But it's not the sole proximate cause. It doesn't have to be. So maybe these other things do. But as long as LSD does also, why doesn't that still make it part of the causal conclusion? Because while the defense expert, who was the only expert that testified at trial, said that LSD could do these things, there was no testimony that it did do that to Kianta when she had these other drugs in her system that also could have done these things. One thing that I think is important to point out, Justice Steigman, and I don't remember if it was you or Justice Heuermann, that mentioned the other people at the party that had consumed the LSD. Brittany Greiner, Kianta's friend, also consumed the LSD at around the same time that Kianta did. And I believe it was approximately 45 minutes later, she saw some walls moving or something like that. The important thing to remember is we're talking about the impact of the LSD at the time of the death, at the time that she stepped onto the interstate. Now, something important to remember in this case, and it's a fact that it's easily lost, is Brittany Greiner was one of the people who went out looking for Kianta when she fled the residence where she lay. There's nothing in this record, the state didn't even try and establish it, showing that Brittany, while she was out looking for Kianta, was still seeing things, or that she was stumbling around. There's no evidence in this record. Why would that be pertinent? It seems to me a given, you know, common experiences in life, that drugs, strong drugs even, would affect different people differently. And they very well could, and that is the very reason why some extra testimony, just like all the other drug abuse homicide cases, should have been elicited here by the state. Is it your position that without expert testimony, the state's unable to establish their verdicts in a homicide of this type? With there being this attenuated causal chain, and us talking about her state of mind and what was influencing her at the time of the accident, barring some evidence that she was operating under the influence of the LSD, and that is what contributed to her stepping on that interstate, yes, the state has failed to disperse it. Well, I'm a juror at this trial. This evidence, going across this field and finding this, regrettable, but the fencing is down where she happened to be. And there was testimony, as I recall, or some inference, that she was going to school and living in Bloomington. Right. So, I suppose the question would be, I'm in the jury room. This is bizarre behavior from a woman who, prior to taking the LSD, is not engaged in any bizarre behavior, nor do we have any report of this. No one suggested, including her best friend who was there with her, that this behavior was at all other than what appears to be bizarre. How do you account for it? Well, one, we don't know when she took the other, especially the Prozac, which has never been explained. But there's no suggestion that any of those drugs have this kind of effect. There is. The defense experts said it was a therapeutic dose, a very low dose. It was a therapeutic dose. An indication, basically, that she is on Prozac and takes it in very small amounts daily. It's a therapeutic dose, or at least that's how people find it. There was testimony that there were other drugs in it, and someone who maybe has never taken Prozac and takes it for the first time, even if it's a therapeutic dose. There are some medications you have to titrate the dose up to a therapeutic dose. We don't know where this Prozac came from. Again, she was at this party when she was essentially assaulted by Jacob Fairchild while she was intoxicated. Maybe she just wanted to get away. I'd like to go back to what you believe is the necessary proof. If I'm understanding correctly, your argument is that we don't have a drug-induced homicide case, the classic drug-induced homicide case where a person takes the drugs and they die. And the pathology report says they died because of this overdose of drugs. That the state is required to present some sort of expert testimony to establish that causal connection that the instruction refers to. My argument, my position is that in a drug-induced homicide case, the state is required to introduce evidence that the act of the defendant, in this case the giving of the drug, was a contributing cause to the crash with the body. What isn't there in this case that says that? I'm sorry? What is not in this case that says that, that it was a contributing cause, the act of giving the LSD was a contributing cause? I don't see anything in this case that indicates that the LSD was a contributing cause to this accident. What accounts for it? You know, I'm on the jury. What accounts for crossing this fence and walking on the Interstate Highway at 2 in the morning? A woman who has recently taken potentially Prozac, who has been... But the expert testimony shows that this, maybe in some combination with LSD, might have been a factor. But the LSD is the only thing that anyone testified could create hallucinations and bizarre behavior like this? No, the defense expert actually testified that Prozac, cannabis, and alcohol all are hallucinogenic, can have hallucinogenic properties, and can cause confusion. The levels they were consumed here? I don't know that he said that specifically. I don't think he did. But again, if you have a person who has never taken Prozac before and starts taking it at a party for the first time, you don't know what impact that's going to have. I guess, honestly, what does that matter? If the causal connection required under the statute is a contributing cause, what does it matter whether you smoked a pound of pot, you consumed a jar of Prozac, as long as the LSD is shown to be a contributing cause? That is, the LSD, at some point in time, after the taking of the LSD, bizarre behavior begins, and then the death. What does it matter if these other drugs exist in our system? Because I think we're at a point where we're disagreeing about the causal evidence in the incident case. I can reasonably see someone who's afraid that they're going to be sexually assaulted by someone at a party saying, if my friend can't get me out of here, I'm leaving. I'm going home. But, counsel, that's an argument. That's a defense for counsel to provide to the jury at trial. We're talking about the sufficiency of evidence. My fellow jurors have taken you through circumstantial evidence as to a contributing cause. I know that you're not arguing cause of death, but as I listen, it sort of sounds as though you want to create a standard whereby the sole cause is the LSD, and the state has to link up the consumption of LSD, and that actually caused a death. That was the link you talked about early on, based upon the circumstantial evidence and the actions, et cetera, I think that the jurists are talking about. Can you speak to that? Yeah, and I'm not saying that they need to prove that the LSD was the cause of... And I know that you're not, but that's what I sort of... Right. That's sort of the link. It's almost like there must be expert testimony. We have expert testimony that LSD can cause these effects, but almost attributed to this victim. That's what I hear. Well, and I guess two things. One, the expert testimony that we have is that he can't find, the expert could not find any evidence that someone with LSD, the level at which he ought to have it in their system, is in any way dysfunctional. That's the evidence. He didn't say, oh, someone with LSD could, you know, do these things. Well, dysfunctional at least says to me you can't walk. You're comatose, or... Is that what she said? But the state didn't further define that term or explain how the LSD impacted Keontes. Back to your point, Justice Kavanaugh, I'm sorry. I'm not trying to argue that the state has to prove that it was the LSD that caused the accident, but there has to be some evidence, not that it could be a contributing cause, not that it may have been a contributing cause, but that to establish this urban proof, establishing that it was a contributing cause. But if there's circumstantial evidence to support all of that and some direct evidence as to behaviors, why should this court take it away from the jury? Because the complete lack of any evidence definitively establishing that here. Again, it could be that the behavior that we're talking about was caused by any of the other drugs, that the defense expert testified that that could in fact be true. You also have a situation where Keontes acted very deliberately in all of this. I'm impressed to believe that someone who is out of her mind crazy is able to logically walk across several fields a half a mile, find an area and a piece of fence that she can walk through to get to the interstate that needs to take her home. That deals with going back to the dysfunctional term. It's impaired judgment, not necessarily your physical ability. I don't think it's impaired judgment. It has to be massively impaired judgment for someone to start walking an interstate highway to get to your home in the middle of the night. Not that she's perhaps trying to hitchhike. No, it's December 18th. She's out walking through fields. Trying to get home because she's been at this party. Walking in the incoming lane of traffic on the interstate. There was testimony, there was mud on her. This is the problem with the case. Because the state didn't introduce any evidence establishing the principles of causation, showing that there was a link between Jeffrey's activity or the LSD and that it was the contributing cause of this accident, we don't know what effect the LSD had on her. You're saying there's no evidence. There's all the other facts that were present. And then you have the expert, the defense expert. Again, I'm hearing you say basically unless the state comes up with their own expert, they can't meet their burden. May I just respond to that? Unless the state produces some evidence showing that the drug was a contributing cause, they haven't satisfied the burden. Okay, thank you, Counsel. We'll have an opportunity to address this again in rebuttal. Okay, Ms. Brooks. Thank you, Your Honor. Good morning. May it please the Court. Counsel. Yes, Counsel. My name is Allison Paige Brooks and I appear on behalf of the people. With respect to the Olney-Pettinger Instruction 7.5, it was a correct statement of the law for drug-induced homicide cases because of the near decision and the defendants have distinguished that case do not require a different instruction. And so it was sufficient to explain to the jury that the Olney's contributing cause standard and the requirement of proximate cause, that because the death did not result from a cause unconnected with the defendant. And even though she was hit by a bus, she was hit by a bus because the defendant gave her LSD. And so that means that that is not an unconnected cause that is still connected even though there is a chain of causation involved. Mr. Wilson makes a pretty persuasive argument that because of the unique facts of this case, that it's not enough to simply say, well, she took all these various drugs, one of them happened to be LSD, therefore the state can somehow meet their burden. And when we're talking normally about proof beyond a reasonable doubt, the burden to establish guilt of a homicide, that there should be some sort of evidence establishing some level of causation between the LSD itself and the cause of death, as opposed to just this potpourri of drugs, one of them happens to be LSD, this is the guy that gave her the LSD, good enough. Well, the record did show that LSD, as a way of amplifying mood, can make someone terrified instead of just scared. Sure, they had all that. Right, and the effect on her, the witnesses who saw that essentially she was gone from what they knew her as, the person, that her mood had dramatically changed and that she was terrified enough to run out of the house alone into the night, trip over a bush and then cross fields as a way of getting to the nearby interstate, it seems like this is something that was caused by LSD because the LSD made her terrified, it amplified the mood that she was experiencing and because of that, it is a matter of what is the amount of LSD that is affecting her when she decides to leave the relative safety of that house where the party is and starts to decide to make the trek home on foot, that is when she is affected. Now, the fact that she's tested later at 1.9 nanograms, this is not a usual case because in a usual case, there is a body that has been affected by an overdose and it can be tested for bodily fluids. This woman was struck massively by a bus at near 70 miles an hour. Her body suffered extreme amount of trauma. She lost a lot of blood and what was tested was a blood-like substance and so there's a reasonable inference here that the levels detected in that testing, the 1.9 may have been affected by the condition of the bodily fluids that were being tested as a result of the massive trauma that she experienced because she was struck by a bus, not a usual overdose case where the testing was more presumably reliable in terms of what actual level of LSD was in the system. Mr. Wilson said, and I think he must be right, that there's no case like this, kind of one step removed from the normal drug-induced homicide where you just have a body that's been... is dead due to an overdose of drugs. Is that correct? I couldn't find it. Just wanted to check. But essentially, the statute reads broad enough to cover this sort of situation because it says it's caused by and if the defendant's act of delivering this to her and her ingestion of the LSD is contributing to the cause of her death and it seems like they're complaining in their brief also about causing the cause of her death and I'll get to that in a second. But I think if they're arguing today, they're emphasizing mostly just the cause in fact but for causation. So if there's a reasonable inference the jury can make based on this record that her ingestion of the LSD, but for that ingestion of the LSD, she would not have been walking on the interstate, that's something the jury can obviously make as a reasonable inference from this record. Does that need the sort of expert testimony to establish that? That would address the contributing cause requirements efficiently? Well, the effect of the lay witnesses who testified about the effects of LSD on themselves, the sort of like the psychological effects on their perceptions, for example, this woman was walking in the lane of traffic. So a reasonable inference there is even at that moment her psychological perceptions were being affected by the LSD because she was simply trying to walk home. She should have stayed on the shoulder and actually getting into an actual lane of traffic. And this is not a situation where a tired bus driver swerved off the road and hit her on the shoulder in which case they might have a stronger argument that this was somehow a supermedia causation. A reckless, speeding, tired bus driver did something wrong. Here, it was completely unavoidable. An African-American woman wearing black clothing in the middle of the night, and the bus driver sees a silhouette for perhaps two seconds because of other traffic conditions, is unable to swerve to avoid her. And so, I mean, there's nothing the bus driver did wrong. So this is much more like the situation if a defendant gives LSD to a person at the top of a 10-story building, and that person, after the judge takes the facts, says, I didn't fly any jumps, we're not going to blame the person who poured the concrete on the sidewalk below for causing the death. This bus was simply just like the concrete at the bottom of a tall building. There's nothing about the bus striking a woman that makes it the sole and unconnected cause of the death. And so, there's no... The state isn't going to have to put on expert testimony if there's evidence in the record to show what the effects of LSD are, generally. To show that this particular person, if they jumped off the top of a building to their death, would have to show that somehow that was the cause. It would not require expert testimony in all cases. And in this case, it's really that much different from that sort of situation. I want to address a subject, or an area, that Mr. Wilson did, and that is the requirement, or the plaintiff's found guilty, of delivering more than 10 objects containing LSD. And because of that, the sensing range was 15 to 30 years in prison, as opposed to what would be a normal class act 6 to 30. Is that correct? I measured precise numbers in the years. Yes, it's an element the state has to prove. Well, it requires a minimum of 15 years, which is a significant difference with regard to delivering more than 10 objects. And if the evidence were not sufficient to prove that, then that would not, the minimum of 15 years would not apply. Is that correct? I'm not sure what the other sentence would be, but the actual 15-year minimum itself is dependent on proof that a reasonable doubt of the 10 segregated objects. Well, that's what I wanted to address. It seems to me that the testimony regarding whether he delivered, and it's, I think, statutory standard is more than 10 objects containing LSD, that the evidence of that is unclear. And you're requiring us to make several inferential leaps, are you not? In fact, did anyone testify that more than 10 objects of LSD were delivered by the defendant? Not one witness specifically for that delivery. There was evidence, including defense statements, believe the police, that there was 12. I think the defense said 12, and there was another witness that said it was cut into 12 to 13. So there were more than 10 objects. At the end of the night, the defendant had no LSD. He left the remainder on the edge of a chair or a table or something, went to the restroom, came back, and it was gone. On the kitchen counter. But essentially... Well, pausing right there, Justice Zerman, if that were true, that wouldn't constitute delivery, would it? It could. That's a real stretch. What you mean? The guy has left some of this LSD in the bathroom, and because he's perhaps using it himself or whatever, he leaves it there in the bathroom and walks, leaves, and later on, someone else just picks it up or takes it. How would that constitute delivery? Well, the definition of delivery was actual constructive or attempted transfer of possession of a controlled substance with or without consideration of whether or not there is an agency relationship. You do not have to hand drugs to somebody. If you set it out on a table for all to take, that is delivery. If you bring the LSD... If you set it out, he said, let's just put it in the bathroom and forgot it there. That wouldn't constitute delivery, would it? If that were true. If it were true, then he lost it in some way. But if he put it out for people to take, that could constitute delivery. What is the evidence of that? Well, because it's a valuable substance and a part in which everybody seems to be... But what is the evidence that he put it out there for everyone to take? Well, he was selling it. So it's a reasonable inference that if he did not... So they were supposed to drop off their money... Yeah, what is this, like self-serve LSD? Is that what you're suggesting? I'm just saying is that it's not a definite thing that if it were taken, that it was not delivered. Because he could have left it to be taken. And expect he was going to get money... People were going to leave it, like, in the water cup in the bathroom or something? Whether or not... It doesn't require consideration. It doesn't have to be paid for anymore. If he leaves it out, essentially knowing... And I said in my brief knowledge, if he was consciously aware, the result would be practically certain that he caused misconduct. So it has to be a knowing delivery. So if he knows it's practically certain that somebody at a party with up to 40 to 75 people who are consuming these sorts of substances finds it and somebody will take it, he knows it's practically certain that oil's going to be gone when he gets back. I mean, that could constitute delivery under the law. That's my only point on that sort of aspect. It is not a definite fact that if he left it out for it to be taken, that means he's not delivered it under the definition of delivery. So let's talk about received, okay? Your best evidence from Brittany Greener, and I spent some time on this point, and I believe this to be your best evidence, is she was asked if anyone was seen taking LSD. The answer, yes, there was a lot of people. How many people do you believe received LSD? The quote was, I personally saw 10, well, maybe around 10. All the other evidence is, you know, maybe three names here, three names there, gets you to a total of 6, 5, 4. The one thing close to 10, or more than 10, is that statement, I personally saw 10, well, around 10, received. Does that get you there? Well, it should with a combination of other evidence, because if there are 12 things and the defendant initially tells police that he did not take any, then he also tells police later that he took one hit. So that means there's still 11 to go away, and at the end of the night, he has none, and the jury's not required to believe his testimony or statement to the police that it was taken, like that there was actual LSD left in that foil when it was taken. The foil could have been taken with no LSD in it if you discarded it, because if the jury infers that, well, even if that's true that the foil was taken and he'd already sold all the LSD or delivered it, the jury can still reasonably infer that even if that part of the statement was true, there was no LSD left, because why would the defendant leave something valuable out to be taken if he was selling it earlier in the evening? So they can just reasonably infer the defendant was lying about any LSD being in that. So there's 12, and the defendant says he didn't take any initially, or even if he took one, there's still 11 left to be delivered, and the evidence shows that he had no LSD at the end of the night, so the jury can reasonably deduce that at least 11 or possibly all 12 had been delivered, especially when you have the testimony that about 10 people had been seen receiving the LSD. Can a jury deduce or infer an essential element of a crime? Yes. Or is it incumbent upon the state to prove up its elements and reach its burden? It can be through circumstantial evidence and reasonable inference. So if we know we have 12, and we know he has none left at the end of the day, and we know he told police that he didn't take any, then what happened to the 12? When you have a witness who saw about 10 people taking it from the defendant, and we know that there's, well, potentially one or two other unaccounted for, and his story is, well, the foil was left out and was taken, and the jury can say, well, wait, he's selling this for money. Why didn't he just leave it out at a crowded party where people are consuming substances, and he might just find it and take it himself? Why is he expecting that's going to be there when he gets back? That just seems very contrary to human experience. Well, he seemed to be a very generous fellow. He brought the keg and some other... I mean, he sort of offered to throw this whole party. Right, but he's trying to make money off this particular substance, so why would he have left any of it out? Well, that's the other thing, wasn't it? She was charging $5 for a hit to the nose, I think, for one of his little pimps. Is that correct? I think there might have been other evidence as to how much she was charging. I did see one reference to $5. I'm not sure how much the victim, Captain Williams, and her friend paid. I'm not sure what their testimony was. But, I mean, it might not seem like a lot of money, but, you know, it is some money. It is a valuable substance, and to think that he would have just left it out, it seems contrary to human experience. And the jury is not required to believe that it's been a statement to the police or his testimony. And so the evidence considered in a light, most favorable rule of prosecution showed that he had 12 when he started, he had none when he left, and he denied that he had taken any himself at one point to the police. So the reasonable inference there is that he had, in fact, delivered all 12. And that can constitute sufficient proof to go to reasonable doubt if the evidence is viewed in a light, most favorable rule of prosecution and all reasonable inferences are taken in favor of the prosecution. With respect to approximate cause, the death has to be reasonably foreseeable. And here, because of the location of this house that was so close, I think less than a quarter mile, just a field separating it from the interstate, the proximity of Capit to Williamton Normal, meaning that this is walkable distance. The fact that she was African-American wearing black clothing at night, meaning that if she did leave, and tried to walk home, she was likely not to be seen by a driver and potentially more at risk of being hit in the middle of the night. Also the fact that this was a very congested, double-wide trailer with 1.75 people in it, extremely congested party with, it almost seems like everybody consuming, which means that the odds of finding a sober driver to take somebody home is going to be extremely low. And if somebody gets terrified by LSD and wants to go home right away and decides to walk, they're not going to find a sober driver to take them home. And it's easy with such a congested party to get lost in the mix. And so when she runs out on her own, people can't initially find her. And so she's able to get away from that immediate environs without being detected by the people who were there to care for her. And the fact that she didn't have a safe buddy who was not consuming LSD. Her friend was consuming LSD. So there's nobody who was not taking LSD to look out for her. This is a very unsafe environment, very dangerously close to I-13, to be consuming this sort of substance without some sort of protection. And so that makes this an extremely foreseeable type of accident to happen. And so the cause, in fact, is proved, the proximate cause is proved, also very reasonable to hope. And so therefore, it's no justification to reverse the conviction for drug-induced homicide. And so for those reasons, the state would request the court to affirm the conviction. Thank you, Catherine. Mr. Wilson, any rebuttal, sir? Just briefly, regarding the amount of LSD that was in Kianta's system, the state seems to say that maybe the reading wasn't accurate, the 1.9. They did stipulate to that at trial that the forensic report came back with 1.9. So that was the agreed stipulation. Regarding this case in general, what we are talking about is guilt beyond reasonable doubt for a homicide offense, not an insignificant offense. Every defendant is entitled to due process, but especially in a case like this. Justice Kavanaugh, you asked about Brittany's testimony regarding the around 10 objects. Well, what we're talking about here is more than 10 objects. In the brief, I set out the six people that the evidence seems to establish the defendant delivered the LSD to. Six obviously is less than 10. To get to that more than 10, that 11 or more threshold, the state talks about this idea that maybe Jeffrey left these drugs on the counter. The important thing to note about that argument was it was expressly during the closing argument, the state expressed and told the jury not to find that. It itself said, this is the state, he's charging $5 to $10 per can of acid. That's money for him. He's not going to send it down the room full of people who use LSD and who experiment with drugs. It's money for him. He's a drug dealer. So the state at trial was essentially saying that there's no validity to this argument that the state now tries to raise, saying that this theft essentially equals a knowing delivery of a controlled substance. They did not cite any case in their brief that supports that theory. I'm aware of that. It is significant that not only was the state required to show the more than 10 in order to secure convictions for counts one and four, but it did get them to that threshold of sentencing so that Jeffrey could be sentenced to more than 15 and less than 30 years. Without that element, what's the minimum sentence? That I'm not sure about. I'd have to go back and look at that. It would not be 15 years. And so again, it brings us back to this proof beyond reasonable doubt that exists not only for the more than 10 element that was not established by the state at trial, but also to this idea of the LSD and its effect on Keonta. Because what it seems like we're talking about here is it may have been the LSD or it could have been the LSD. That's not proof beyond reasonable doubt. What the state is required to do is to establish their firm to show that the LSD was, not could have been, was a contributing cause to Keonta's death. They failed unlike almost any other drug abuse homicide case, they failed to introduce evidence linking those two things together. Evidence that's even present in cases where someone overdoses on the drug and dies. Well, let me ask you, going to Justice Kavanaugh's hypothetical. No, actually it was Ms. Brooks' hypothetical about LSD at the top of the building. They tell us the things, if you look at this, I can fly and it jumps off the building from ten stories up and dies. If that's the evidence, what sort of expert testimony do you think would be required to establish that the LSD was a cause and effect? That hypothetical poses a situation that we don't have presently in this new case. I understand that. See, the nice thing about hypothetical questions is it's hypothetical. If it was that direct, we have a much closer question here. That's also interesting and it would be a closer question, but I wanted to have you answer the question I asked, which is what sort of evidence would the state be required, given the argument you're all making, to show the causal connection? I would say that the amount of LSD, LSD was the drug of the reason. The amount of LSD in the person that jumped from the building was sufficient to cause them to do that. It was enough because if they have a crumb of LSD, I've never done LSD, but if they have a crumb of LSD, that may not be enough to affect them in any way. We don't know. What we don't have here, and let me just change the hypothetical around here. It's similar to the one Ms. Brooks uses, but if Kianta had no other chemicals in her system, and she took the LSD and started telling everybody, hey, I see the walls are moving, I'm going to go out and I'm going to chase that purple bunny rabbit, and she runs out of the house across the road and gets hit by a car, that's a lot closer case than what we have here, but we have other variables. This idea that there are other drugs in her system and that she traverses, it was three to four hours between the time she took the LSD and the bus truck. Based on all of these factors, more is required than just saying it may have been the LSD, or it was probably the LSD. Thank you, counsel. We'll take this matter under advice and be in recess for a few more minutes.